## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAM R.,[1]

        Plaintiff,

                                  **Case No. 2:22-cv-6378**

    v.                             **Magistrate Judge Norah McCann King**

CAROLYN COLVIN,
**Acting Commissioner of Social Security,**

        Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ram R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I. PROCEDURAL HISTORY

On September 21, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since December 1, 2010. R. 72, 82, 198–201. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Carolyn Colvin, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

and upon reconsideration. R. 83–87, 94–96. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 97–98. ALJ Lori Romeo held a hearing on May 13, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 26–62. In a decision dated November 26, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 1, 2010, Plaintiff's alleged disability onset date, through December 31, 2015, the date on which Plaintiff was last insured for disability insurance benefits. R. 12–21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 9, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 13, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On that same day, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 56 years old on December 31, 2015, the date on which he was last insured for benefits. R. 14, 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 1, 2010, Plaintiff's alleged disability onset date, through December 31, 2015. R. 15.

At step two, the ALJ found that Plaintiff's attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, and insomnia were severe impairments. *Id*. The ALJ also found that Plaintiff's macular hold impairments were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15–16.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 16–19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a software engineer. R. 19.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*., jobs as a laundry laborer, a cleaner II, and a laborer stores— existed in the national economy and could be performed by Plaintiff. R. 20. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2010, his alleged disability onset date, through December 31, 2015, the date on which he was last insured. R. 21.

Plaintiff disagrees with the ALJ's findings at step four, complains that the ALJ failed to obtain a clear recording of the hearing, and argues the ALJ should have ordered a medical expert. Plaintiff asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 15. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On November 16, 2020, Barbara Winograd, M.D., Plaintiff's treating psychiatrist since 1997, completed a five-page, check-the-box, and fill-in-the-blank form entitled Mental Impairment Source Statement. R. 473–77. She diagnosed major depression, recurrent, post-traumatic stress disorder ("PTSD"), and ADHD, and opined that Plaintiff's impairments had lasted or were expected to last at least 12 months. R. 473-74. Asked to explain the clinical findings that demonstrated the severity of Plaintiff's mental impairments, Dr. Winograd stated, "decreased energy, feelings of guilt & worthlessness[,] recurrent thoughts[,] change in personality, seclusiveness, emotionally closed, anxiety, easy distractability." *Id*. The signs and symptoms of Plaintiff's impairments included decreased energy, feelings of guilt or worthlessness, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress, seclusiveness or autistic thinking, emotional withdrawal or isolation, emotional lability, and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week. *Id*. Plaintiff did not have

8

reduced intellectual functioning and his psychiatric conditions did  not exacerbate his experience of pain or any other physical condition. R. 474–75. Dr. Winograd also assessed Plaintiff's ability to perform work-related activities on a day-today basis in a regular work setting using the following scale: unlimited or very good; limited but satisfactory; seriously limited and not satisfactory (meaning the ability to function in this area is seriously limited and less than satisfactory, *i.e*., a substantial loss of ability to perform the work-related activity); unable to meet competitive standards (meaning that one cannot satisfactorily perform an activity independently, appropriately, effectively, and on a sustained basis in a regular work setting); and no useful ability to function (meaning an extreme limitation in which one cannot perform an activity in a regular work setting). R. 475. According to Dr. Winograd, Plaintiff was seriously limited and was not satisfactory in his abilities to maintain attention for a two-hour segment; ask simple questions or request assistance; adhere to basic standards of neatness and cleanliness; and travel in an unfamiliar place. *Id*. Dr. Winograd  further opined that Plaintiff was unable to meet competitive standards in his abilities to remember work-like procedures; understand and remember very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; be aware of normal hazards and take appropriate precautions; maintain socially appropriate behavior; and use public transportation. *Id*. Plaintiff had no useful ability to function in his abilities to maintain regular attendance and be punctual within customary, usually strict, tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly

distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; and interact appropriately with the general public. *Id*. Dr. Winograd went on to opine that Plaintiff had marked (meaning more than moderate but less than extreme) difficulties in understanding, remembering, or applying information; extreme difficulties in interacting with others; extreme deficiencies of concentration, persistence, or pace; and extreme difficulties in adapting or managing himself. R. 476. According to the doctor, Plaintiff had a serious and persistent mental disorder of at least two years' duration in which he relied, on an ongoing basis, on medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the his mental disorder; and, despite his diminished symptoms and signs, Plaintiff had achieved only marginal adjustment (meaning that Plaintiff had minimal capacity to adapt to changes in his environment or to demands that were not already part of his daily life). *Id*. She also agreed that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id*. However, Dr. Winograd denied that Plaintiff's impairments were likely to produce "good days" and "bad days." R. 477. Dr. Winograd stated: "pt w/ low level of functioning[.]" *Id*. Dr. Winograd later supplemented her report by indicating that Plaintiff's conditions had existed and had persisted with these restrictions since at least 2010. R. 478.

## V.    DISCUSSION

Plaintiff argues that the ALJ erred in her consideration of, *inter alia*, Dr. Winograd's opinion. *Plaintiff's Brief*, ECF No. 8, pp. 11–15; *Plaintiff's Reply Brief*, ECF No. 15, pp. 1–2. This Court agrees, including for some additional reasons slightly different from those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-

1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter,* 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to

---

[4] As previously noted, Plaintiff's claim was filed on September 21, 2018.

any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior

12

administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

At step four of the sequential evaluation process in the present case, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain additional non-exertional limitations as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he was limited to work that requires little or no judgment to do simple duties that a person can learn on the job in a short period of time (i.e., 30 days or less), usually SVP of 1 or 2 as rated in the SCO; and low stress work - defined as only occasional decision making and only occasional changes in work setting; could have only occasional interaction with the public and coworkers; could not do work requiring very fine visual acuity like looking at small stiches or words on a pill bottle but could read regular print and a computer screen.

R. 16–17. In making this determination, the ALJ found, *inter alia*, that Dr. Winograd's opinion was unpersuasive, reasoning as follows:

> As for the opinion evidence, Dr. Winograd completed an assessment form in November 2020, five years after the date last insured (Exhibit 8F). *She reported treating the claimant since 1997.* She noted diagnoses including major depression, PTSD and ADHD. She indicated that the claimant's medications caused significant side effects that could be expected to frequently limit the claimant's effectiveness at work duties including focusing and concentrating. She noted clinical findings, signs and symptoms including decreased energy, feelings of guilt and worthlessness, recurrent thoughts, change in personality, seclusiveness, being emotionally closed, anxiety, easy distractibility, difficulty thinking or

13

concentrating, recurrent and intrusive recollections of trauma, emotional lability and recurrent panic attacks. She indicated that the claimant was unable to meet competitive standards or had no useful ability to function in almost all mental abilities and aptitudes needed to do unskilled work. She concluded that the claimant had marked difficulties in understanding, remembering or applying information; extreme difficulties in interacting with others; extreme deficiencies of concentration, persistence or pace; and extreme difficulties in adapting or managing himself. She indicated that the claimant would not be able to manage benefits in his own best interest. She indicated that the claimant's conditions existed and persisted with the restrictions as outlined in her medical source statement since at least 2010. I find Dr. Winograd's opinion unpersuasive. It comes from the claimant's treating psychiatrist, but *such extensive limitations are not supported by her treatment notes through the date last insured. This doctor did not treat the claimant throughout the period. It is also inconsistent with the claimant's own reports of being able to drive, manage his own money and travel out of the county to Peru and India during the relevant time between December 2010 and December 2015.*

R. 18–19 (emphasis added).

Plaintiff challenges the ALJ's consideration in this regard, arguing that the ALJ's three proffered reasons for rejecting Dr. Winograd's opinion—*i.e.*, that the physician's treatment notes were illegible, that Dr. Winograd did not treat Plaintiff throughout the period, and that the doctor's opined limitations were inconsistent with Plaintiff's own reports—were all flawed. *Plaintiff's Brief*, ECF No. 8, pp. 11–15; *Plaintiff's Reply Brief*, ECF No. 15, pp. 1–2. The Acting Commissioner disagrees, arguing that substantial evidence supports the ALJ's consideration of this opinion. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, pp. 11–16.

After considering the record and the parties' arguments, the Court concludes that this issue requires remand. First, although the ALJ discounted Dr. Winograd's opinion on the ground that the opined limitations were not supported by that physician's treatment notes, R. 19, as Plaintiff points out, the ALJ stated at the hearing that Dr. Winograd's notes were illegible and that she could not read them. R. 32 ("[U]nfortunately I cannot read [the records] and the records are illegible . . . . I cannot read them. . . . Honestly, I cannot read them."). Although there was some mention of obtaining typed copies of Dr. Winograd's handwritten notes, R. 32–34, no such

copies appear in the administrative record. The Court is at a loss to understand how the ALJ could ultimately determine that this physician's treatment notes did not support her opined limitations when the ALJ admitted that she could not decipher Dr. Winograd's treatment notes. *Cf. Kenneth M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01090 EAW, 2022 WL 1637885, at *5 (W.D.N.Y. May 23, 2022) ("[T]he ALJ characterized the opinion from Dr. Kim, the only treating source in the record, as 'largely illegible,' essentially conceding that by and large, the majority of the opinion was not considered at all. (Dkt 12 at 98). Even under the current regulations, the opinion of a treating source continues to have importance to the ALJ's analysis."); *Guarneri v. Berryhill*, No. 16-CV-5868 (KAM), 2019 WL 1865195, at *17 (E.D.N.Y. Apr. 24, 2019) (remanding where, *inter alia*, "[d]espite the inability to read these [mental health] records, the ALJ concluded that Dr. Filimonov's finding of 'extreme limitations by the plaintiff were 'inconsistent with the largely normal mental status findings documented by Dr. Filimonov himself'") (citations omitted). The ALJ's contradictory cannot support her rejection of Dr. Winograd's opinion on this basis. *Cf. Krout v. Berryhill*, No. 3:16-CV-2055, 2017 WL 2692003, at *11 (M.D. Pa. June 22, 2017) ("Thus, without additional explanation, the ALJ's asserted internal contradiction does not provide an adequate basis to undermine Dr. Fischetto's finding on the marked restriction identified.").

To the extent that the ALJ may have deciphered one portion of Dr. Winograd's notes dated February 8, 2012, R. 18 ("Dr. Winograd noted that the claimant was prescribed Adderall[.]") (citing Exhibit 6F/29, R. 418), and March 15, 2016, *id.* ("During a March 15, 2016 visit with Dr. Winograd, the claimant reported that his eyes were much better and he felt less

depressed[.]") (citing Exhibit 6F/24, R. 413),[5] earlier in the step four analysis, the ALJ's

implication that she could and did review and understand all of Dr. Winograd's illegible

treatment notes nay suggest that the ALJ improperly cherry-picked from a small selection of

legible notes, which is forbidden. *See Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL 178824,

at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not constitute

substantial evidence upon which an ALJ may reasonably rely to deny benefits.") (citations

omitted); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J.

May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment

of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from

Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the

conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989,

2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of

treating professionals or cherry pick evaluations, diagnostics, or opinions that support a

particular conclusion."); *cf. See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir.

2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or

the wrong reason.'") (quoting *Morales*, 225 F.3d at 317).

      The Acting Commissioner's contrary arguments do not persuade this Court that

substantial evidence supports the ALJ's first proffered reason for discounting the Dr. Winograd's

opinion. The Acting Commissioner contends that "the illegible nature of Dr. Winograd's

treatment notes did not prejudice the ALJ's conclusions because no more than two of those

treatment notes was relevant to the period at issue[,]" arguing that there was only one treatment

---

[5] The Court notes that, although the March 2016 note reflects the statement that Plaintiff's
"[e]yes much better" and he was "[l]ess depress[ed,]" the word "but" follows that statement,
along with additional language that the Court cannot decipher. R. 413.

note from February 2012 and one from February 2016 and that those notes reflect only that Dr.

Winograd prescribed certain medication and that Plaintiff was traveling out of the country.

*Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, p. 14. As a preliminary matter,

the Court notes that the ALJ took a broader view of Dr. Winograd's relevant records than the

Acting Commissioner's characterization would suggest: the ALJ cited to this physician's records

from at least October 2010 and to March 2016. R. 19 (citing, *inter alia*, Dr. Winograd's

treatment note dated October 17, 2010, appearing at Exhibit 2F/3, R. 328, and her treatment note

dated March 15, 2016, appearing at Exhibit 6F/24, R. 413). Moreover, this Court has already

explained that the ALJ expressly stated that Dr. Winograd's treatment notes were illegible and

that she could not read them. To the extent that the Acting Commissioner now attempts to fill in

the blanks and decipher those notes, the Court cannot accept the Acting Commissioner's *post*

*hoc* interpretation of Dr. Winograd's treatment notes. *See Christ the King Manor, Inc. v. Sec'y*

*U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also

be based on 'the administrative record [that was] already in existence' before the agency, not

'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after

the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir.

1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not

substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations

omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J.

Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the

rationale contained in that decision; the Court is not to consider hypothetical rationales, which

may justify the ALJ's decision, but which were not in fact underlying the opinion in question.")

(citation omitted).

The Acting Commissioner further asserts that "[o]ther evidence" supported the ALJ's conclusion that Dr. Winograd's opinion was unpersuasive. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, pp. 14–15. While the ALJ's two remaining proffered reasons for discounting Dr. Winograd's opinion will be addressed next, the Court must reject the Acting Commissioner's reasoning to the extent that she points to reasons not identified by the ALJ for discounting this opinion. *See id*.; *see also Quinn v*, 2022 WL 178824, at *5; *Segal*, 2020 WL 2111229, at *6–7; *Pastuch*, 2018 WL 2018063, at *9.

The ALJ next explained that she found Dr. Winograd's opinion unpersuasive because that physician "did not treat the claimant throughout the period." R. 19. However, the ALJ expressly acknowledged Dr. Winograd's treatment notes dated October 2010, February 2012, and March 2016, R. 18, and the record also contains additional treatment notes, including notes from February 2016. R. 415–17.[6] This evidence—and the ALJ's own reliance on such evidence—belies the ALJ's assertion that Dr. Winograd did not treat Plaintiff during the relevant period.

The ALJ's third reason for discounting Dr. Winograd's opinion is that her opinion was inconsistent with Plaintiff's "own reports of being able to drive, manage his own money and travel out of the county to Peru and India during the relevant time between December 2010 and December 2015." R. 19. However, in making this finding, the ALJ overstated Plaintiff's activities or omitted the context of those activities. For example, although the ALJ stated that Plaintiff was able to drive, Plaintiff actually testified at the hearing that he drove "once in a

---

[6] The Acting Commissioner acknowledges a treatment note from February 2012, arguing that it was "misdated as 11/2015[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, p. 14 (citing "Tr. 421-18"). However, the Court notes that the record appears to contain notes from both February 2012 and November 2015. R. 418 (bearing the date "2/8/12" as well as "11/[___]/15").

while" but did not drive "most of the time" because of his anxiety, which prevented him from focusing on the road, and because of difficulties with his vision. R. 41, 53. In his function report, Plaintiff similarly stated, "[W]hen I am anxious, I cannot see clearly and so I don't drive. And I don't drive when it is dark." R. 261. As for managing his own money, much of the relevant portion of the hearing transcript was inaudible:

> Q During the period of 2010 through 2015 could you pay your bills? Could you manage your own money?
>
> A Yes -- yes, I didn't have may [sic] bills to pay. I seemed to manage, *but* [INAUDIBLE] yes, I could do that part.

R. 52 (emphasis added). It is true that Plaintiff traveled to Peru and India during the relevant period; however, even the ALJ acknowledged earlier in her step four discussion that Plaintiff continued treatment while traveling in those countries. R. 17. Notably, Plaintiff testified during the hearing that he traveled to Peru specifically to undergo psychedelic therapy. R. 48–49. Plaintiff further testified that, although he traveled to India to spend time with his father, he continued to receive medication treatment during that visit. R. 43–44, 46. For all these reasons, the Court is not persuaded that Plaintiff's activities provide substantial support for the ALJ's rejection of Dr. Winograd's opined limitations. *Cf. Blair v. Colvin*, No. 3:15-CV-1974, 2016 WL 1089223, at *15 (M.D. Pa. Mar. 21, 2016) ("The ALJ's overstatement of Plaintiff's activities of daily living, without an explanation for the elimination of the qualifying aspects of Plaintiff's testimony and statements, renders his reliance on her activities of daily living problematic.").

Furthermore, the Court cannot conclude that the ALJ's flawed reasons for discounting Dr. Winograd's opinion is harmless. This is particularly so where the RFC limited Plaintiff to, *inter alia*, work that requires little or no judgment to do simple duties that a person can learn on the job in a short period of time (i.e., 30 days or less); low stress work - defined as only

occasional decision making and only occasional changes in work setting; and requiring only occasional interaction with the public and coworkers. R. 16–17. This is particularly true in light of Dr. Winograd's opinion that Plaintiff was unable to meet competitive standards in his abilities to, *inter alia*, remember work-like procedures; understand and remember and carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted, and her opinion that Plaintiff had no useful ability to function in the areas of, *inter alia*, maintaining attendance and being punctual within customary, usually strict, tolerances; sustaining an ordinary routine without special supervision; making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. R. 475. Notably, the vocational expert testified that being absent two or more days per month would be work preclusive and that a workplace would tolerate being off task no more than 14% of the time. R. 59–60.

In short, based on this record, the Court simply cannot conclude that substantial evidence supports the ALJ's conclusion that Dr. Winograd's opinion was "unpersuasive" or that this error was harmless. This Court therefore concludes that remand of the matter for further consideration is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of the

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Winograd's opinion and of the RFC determination, the Court does not consider those assertions. However, although not raised by the parties, the Court notes that the ALJ limited Plaintiff to only occasional interaction with the public and coworkers but was silent as to Plaintiff's interaction with supervisors, R. 17, and did not address Dr. Winograd's opinion that Plaintiff, *inter alia*, had no useful ability to accept instructions and respond appropriately to criticism from supervisors. On remand, it would be helpful if the ALJ clarified Plaintiff's ability to interact, if at all, with supervisors. *See Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015) ("The public,

evidence and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin*., No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec*., No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

For these reasons, the Court **REVERSES** the Acting Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  December 10, 2024                                 *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                                    UNITED STATES MAGISTRATE JUDGE

---

supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others."); *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *1–2 (W.D. Pa. Sept. 23, 2014) ("This omission infects the hypothetical to the vocational expert, which, in this case, did not include a reference to interaction with supervisors. . . . This matter must be remanded so that the ALJ may address whether he rejected this limitation, or, if he failed to consider it, to do so.") (citations omitted).